

# THE ATTORNEY GENERAL
## OF TEXAS

February 12, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Clayton T. Garrison
Executive Director
Employees Retirement System
   of Texas
P. O. Box 13207
Austin, Texas   78711

Opinion No.   JM-631

Re:   Authority of the Employees
Retirement System and the State
Board of Insurance in regard to
health maintenance organizations

Dear Mr. Garrison:

You ask several questions about the authority of the Employees
Retirement System of Texas (ERS) to contract with health maintenance
organizations (HMOs). Specifically, you ask about the authority of an
HMO and the ERS to enter into a contract that contains provisions that
would require the HMO to contravene rules promulgated by the State
Board of Insurance to regulate HMOs. Before we address your specific
questions, we will set out background information about the ERS and
state and federal regulation of HMOs.

In 1975 the legislature passed the Texas Employees Uniform Group
Insurance Benefits Act, which provides for health benefits coverage
for all state employees. Ins. Code art. 3.50-2. The board of trustees
of the ERS is authorized to administer and implement the act and to
promulgate all rules necessary to carry out the purposes and pro-
visions of the act. Id. §4. In 1977 the legislature amended the act
by adding section 5(e), which gives the ERS authority to contract with
HMOs:

> The trustee is authorized to select and con-
> tract for services performed by health maintenance
> organizations which are approved by the federal
> government or the State of Texas to offer health
> care services to eligible employees and annuitants
> in a specific area of the state. Eligible
> employees and annuitants may participate in a
> selected health maintenance organization in lieu
> of participation in the health insurance benefits
> in the Employees Uniform Group Insurance Program,
> and the employer contributions provided by
> Subsection (a), Section 15 of this Act for health
> care coverage shall be paid to the selected
> health maintenance organizations on behalf of the
> participants.

Acts 1977, 65th Leg., ch. 785, §5, at 1997.

HMOs operate in Texas pursuant to the Health Maintenance Organization Act. Ins. Code arts. 20A.01 through 20A.35. The State Board of Insurance (SBI) is authorized to promulgate rules necessary to carry out the provisions of the Health Maintenance Act. Ins. Code art. 20A.22. No HMO may operate in Texas without a certificate of authority issued by the commissioner of insurance. Ins. Code arts. 20A.03, 20A.05. An applicant for a certificate of authority must submit, among other things, a copy of its basic organizational document, a copy of the form of any group contract to be issued, and a copy of the evidence of coverage to be provided to enrollees. Ins. Code art. 20A.04. See also Ins. Code art. 20A.09 (requirements for evidence of coverage). The commissioner may suspend or revoke a certificate of authority issued to an HMO if the HMO is operating in contravention of its basic organizational documents or if the HMO issues evidence of coverage that does not comply with article 20A.09. Ins. Code art. 20A.20(a)(1), (2). See also art. 20A.20(a)(3) through (10) (other reasons for suspension or revocation of certificate of authority).

HMOs are also subject to federal regulation. See Health Maintenance Organization Act of 1973, 42 U.S.C. §§300e through 300e-17. As part of that legislation, Congress specifically preempted certain types of state laws affecting HMOs:

> In the case of any entity --
>
> (1) which cannot do business as a health maintenance organization in a State in which it proposes to furnish basic and supplemental health services because that State by law, regulation, or otherwise --
>
> > (A) requires as a condition to doing business in that State that a medical society approve the furnishing of services by the entity,
> >
> > (B) requires that physicians constitute all or a percentage of its governing body,
> >
> > (C) requires that all physicians or a percentage of physicians in the locale participate or be permitted to participate in the provision of services for the entity, or
> >
> > (D) requires that the entity meet requirements for insurers of health care services doing business in that State respecting initial capitalization and

> establishment of financial reserves
> against insolvency, and
>
> (2) for which a grant, contract, loan, or
> loan guarantee was made under this subchapter
> or which is a qualified health maintenance
> organization for purposes of section 300e-9 of
> this title (relating to employees' health
> benefits plans),
>
> such requirements shall not apply to that entity
> so as to prevent it from operating as a health
> maintenance organization in accordance with
> section 300e of this title.

42 U.S.C. §300e-10(a). The federal act also preempts any state regulation that interferes with the effective operation of the federal plan. Health Care Plan of New Jersey, Inc. v. Schweiker, 553 F.Supp. 440, 445 (D.N.J. 1982), aff'd, 707 F.2d 1391, cert. denied, 464 U.S. 815 (1983). By upholding the state laws regulating HMOs that were in question in Health Care Plan of New Jersey, however, the court implicitly held that congress had not occupied the entire field of HMO regulation and that states could regulate HMOs. For purposes of this opinion, we will assume that state laws and regulations governing HMOs are valid and have not been preempted.[1] See also 42 U.S.C. §300e-9 (states which receive certain federal funds must offer HMO option to certain employees).

Your first question is whether the SBI may refuse to approve an agreement entered into between an HMO and the ERS if the agreement states that the rules of the ERS take precedence over any conflicting provision contained in the HMO's basic evidence of coverage document. When the ERS is contracting with an HMO, you argue, the ERS' authority to make rules to carry out the provisions of the Texas Employees Uniform Group Insurance Act is paramount to the SBI's authority to make rules to carry out the Health Maintenance Organization Act. As support for your position you cite the rule that, in the case of a conflict between two laws, a specific provision controls over a general provision. This interpretation of the ERS' rule-making authority is too broad. There is no need to invoke the rule that specific statutes take precedence over general statutes here because the two laws in question are not in conflict.

---

1. You raise the preemption issue in your third question by arguing that article 3.51-6, §3B, of the Insurance Code has been preempted by a recent federal law. In our discussion of your third question, we point out that neither article 3.51-6, §3B, nor the recent federal law applies to your question.

The SBI has authority to make rules regulating HMOs. Ins. Code art. 20A.22. The ERS, in contrast, merely has authority to contract with HMOs. Ins. Code art. 3.50-2, §5(e). It is a novel suggestion that the power to contract with an HMO gives the ERS power to authorize actions by an HMO that are prohibited by a valid SBI rule applicable to all HMOs. See 2 Tex. Jur. 3d Administrative Law §11 (1979) (administrative agency may not exercise a power conferred on another agency). We know of no authority for the proposition that a state agency's authority to contract with an entity allows the state agency to regulate that entity or to override the rules of another state agency that is authorized to regulate that entity.

Furthermore, section 5(e) of article 3.50-2 gives the ERS authority to contract with HMOs that "are approved by the federal government or the State of Texas" to offer services in a certain area of the state. We think that language makes clear that the legislature did not intend to give the ERS power to regulate HMOs or to excuse HMOs contracting with the ERS from complying with SBI rules applicable to all HMOs. Rather, the ERS has authority to contract for the services of HMOs that operate pursuant to applicable state and federal regulations. In other words, the ERS must take an HMO as it finds it. Cf. art. 3.50-2, §5(a) (SBI provides ERS list of insurance carriers eligible to bid on the coverages desired by ERS). Therefore, we conclude that it is within the authority of the SBI to refuse to approve a contract between the ERS and an HMO that states that ERS rules take precedence over conflicting SBI rules.

Your next question is a more specific version of your first one. You ask whether an HMO contracting with the ERS is exempt from a rule promulgated by the SBI regarding "third generation coverage." 28 T.A.C. §11.506(10) (1984). Before we address your question we will explain the background of the rule in question.

In 1973 the legislature enacted the following provision:

> No individual policy or group policy of accident and sickness insurance, including policies issued by companies subject to Chapter 20, Texas Insurance Code, as amended, delivered or issued for delivery to any person in this state which provides for accident and sickness coverage of additional newborn children or maternity benefits, may be issued in this state if it contains any provisions excluding or limiting initial coverage of a newborn infant for a period of time, or limitations or exclusions for congenital defects of a newborn child.

Art. 3.70-2, subdiv. (E). The SBI has interpreted that provision to mean that an insurance policy that provides maternity benefits for dependents must provide coverage for children of dependents. You refer to this type of coverage as "third generation coverage." We

will assume, for the purposes of this opinion, that the SBI has properly interpreted article 3.70-2(E). See Texas Health Facilities Commission v. El Paso Medical Surgical Associates, 573 S.W.2d 291, 295 (Tex. Civ. App. - Tyler 1978, writ ref'd n.r.e.) (courts give deference to statutory interpretation of agency administering statute); see generally Letter Advisory No. 39 (1973) (discussing constitutionality of bill which became article 3.70-2(E) of the Insurance Code).

Article 3.70-2(E) itself does not apply to HMOs. Ins. Code art. 20A.26(a) (provisions of insurance law and provisions of group hospital service corporation laws not applicable to HMOs except as provided in HMO Act). However, the SBI has promulgated a rule providing that no evidence of coverage issued by an HMO may contain any provision excluding or limiting coverage for a newborn child. 28 T.A.C. §11.506(10)(C) (1984). The SBI has interpreted its rule as requiring third generation coverage. As authority for its rule, the SBI cites article 20A.09(a)(3)(A), which states that no evidence of coverage may contain provisions that are unjust, unfair, or unequitable.

You argue that a contract between the ERS and an HMO need not provide for third generation coverage for several reasons. First, you argue that because the legislature exempted HMOs from article 3.70-2(E), the SBI rule imposing the same restriction on HMOs conflicts with state law. We disagree. This is not a case in which article 3.70-2(E) is singled out and specifically made inapplicable to HMOs. Rather, article 3.70-2(E) is a member of the general category of insurance laws, which are inapplicable as a class to HMOs. Ins. Code art. 20A.26(a). We think that the purpose of making that broad category of laws inapplicable to HMOs is to make clear that HMOs operate differently from traditional health insurance plans and that HMOs are subject to a separate regulatory scheme specifically tailored to HMOs. We do not think that the purpose of making that broad category of laws inapplicable to HMOs was to preclude the SBI from adopting a rule applicable to HMOs that happens to have the same requirements as a statute applicable to insurance companies.

You also argue that the rule requiring third generation coverage cannot be applied to an HMO contracting with the ERS because of the way "dependent" is defined for purposes of article 3.50-2. The act defines "dependent" as follows:

> 'Dependent' shall mean the spouse of an employee or retired employee and an unmarried child under 25 years of age, including; (A) an adopted child and (B) a stepchild, foster child, or other child who is in a regular parent-child relationship and (C) any such child, regardless of age, who lives with or whose care is provided by an employee or annuitant on a regular basis if such child is mentally retarded or physically

> incapacitated to such an extent as to be dependent
> upon the employee or retired employee for care or
> support, as the trustee shall determine.

Ins. Code art. 3.50-2, §3(a)(8). You argue that the ERS cannot enter into a contract that provides for third generation coverage because the ERS would be violating the terms of article 3.50-2 if it did so. You conclude from that premise that the specific definition of "dependent" in article 3.50-2 takes precedence over the SBI's general power to make rules governing HMOs. We disagree. We think that the provisions of article 3.50-2 can be read in harmony with the SBI rule in question.

Section 19 of article 3.50-2 requires the ERS to make coverage available for dependents of state employees:

> (a) Any employee or annuitant shall be en-
> titled to secure for his dependents any uniform
> group coverages provided for employees under this
> Act, as shall be determined by the trustee.
> Payments required of the employee in excess of
> employer contributions shall be deducted from the
> monthly pay of the employee or from his retirement
> benefits in such manner and form as the trustee
> shall determine.

> (b) A surviving spouse of an employee or a
> retiree who is entitled to monthly benefits paid
> by a retirement system named in this Act may,
> following the death of the employee or retiree,
> elect to retain the spouse's authorized coverages
> and also retain authorized coverages for any
> dependent of the spouse, at the group rate for
> employees, provided such coverage was previously
> secured by the employee or retiree for the spouse
> or dependent, and the spouse directs the applic-
> able retirement system to deduct required contri-
> butions from the monthly benefits paid the
> surviving spouse by the retirement system.

> (c) The surviving spouse of an employee or a
> retiree who designated or selected a time certain
> annuity option, upon expiration of the annuity
> option may retain authorized coverages by advance
> payment of contributions to the Employees Retire-
> ment System of Texas under rules and regulations
> adopted by the trustee.

Accordingly, the ERS **must** make coverage available for dependents as that term is defined in section 3(8). Section 19, however, does not prohibit coverage of the child of a dependent. Section 19 sets out a minimum requirement for available coverage, not a maximum.

Furthermore, article 3.50-2, section 4A, gives the trustees of the ERS authority to adopt standards for determining eligibility for participating in the state plan. We think that provision gives the trustees of the ERS some discretion in determining who is eligible to participate in that plan. That discretion is limited both by the specific requirements of article 3.50-2, section 19, and by the limitations applicable to the entities with which the ERS contracts. Therefore, we do not think that the ERS is prohibited from entering into a contract that provides for third generation coverage.[2]

Your third question is whether a contract between the ERS and an HMO can require termination of coverage of a dependent if the dependent moves out of the service area of an HMO. Your brief contains much discussion of article 3.51-6, §3B, V.T.C.S., which provides for continuation coverage under a group contract issued by an HMO if a dependent's eligibility ceases because of the severance of the family relationship or the retirement or death of a member of the group. Id. Your brief also discusses section 10003 of the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82 (1986), which also requires continuation coverage under certain circumstances. Each of those statutes is triggered by certain specified "qualified events." For example, the statutes regarding continuation coverage would apply if a dependent ceased to be a dependent. See art. 3.51-6, §3B (triggered by severance of family relationship or retirement or death of a group member); Pub. L. No. 99-272, §2203, 100 Stat. 232 (1986) (triggered by a dependent child ceasing to be a dependent and other events not applicable here). But neither of those statutes is triggered simply because a dependent moves away from the area in which the group member lives.

Section 19 of article 3.50-2, rather than statutes dealing with continuation coverage, supplies the answer to your question. That section provides that a state employee is entitled to be able to secure coverage under his group plan for his dependents as defined in article 3.50-2, section 3(8) (defining "dependent"). There is no requirement in the act that the dependent live with the group member.[3]

---

2.   We emphasize that we are not taking a position on whether the SBI has correctly interpreted article 3.70-2(E) or on whether the SBI's rule regarding HMOs that requires third generation coverage is a valid rule. We say only that the SBI is authorized to treat HMO contracts with the ERS in the same manner as it treats other HMO contracts. Also, we think the legislature should be made aware of these issues so that it can clarify them.

---

3.   If a child is over 25, he must live at home and be mentally retarded or physically incapacitated to be a "dependent" for purposes of the act.

The basis for your argument that coverage should cease when a dependent moves out of an HMO's service area is that, except for emergency services, an HMO only provides health services in a limited geographical area. Because of the limited service area of an HMO, coverage by an HMO would be inconvenient for someone who lived outside the HMO's service area, and state employees should consider that a factor when choosing a health plan. The fact that an HMO has a limited service area, however, does not change the fact that a state employee is entitled to coverage for his dependents. If the state employee is enrolled in an HMO, he is still entitled to coverage for a dependent, even if the dependent does not live in the service area of the HMO.

## S U M M A R Y

The board of trustees of the Employees Retirement System has no authority to regulate HMOs. The board may not authorize HMOs contracting with the ERS to violate State Board of Insurance rules applicable to all HMOs.

A state employee enrolled in an HMO is entitled to coverage for a dependent even if the dependent does not live in the service area of the HMO.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General